**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×
WOO JUNG CHO,

                 *Plaintiff,*                                **19 CV 513**

      *v.*

CINEREACH LTD. and                          **COMPLAINT**
PHILIPP ENGELHORN, individually,

                 *Defendants.*
------------------------------------------------------------------------×

Plaintiff Woo Jung Cho, by her counsel, The Law Offices of Veronica S. Jung PLLC, alleges for her Complaint against Defendants Cinereach Ltd. and Philipp Engelhorn, as follows:

### PRELIMINARY STATEMENT

1.      Woo Jung Cho spent four years working for Cinereach Ltd. ("Cinereach" or "the Company") as a senior member of its leadership team, overseeing and managing Cinereach's business and legal affairs and other portfolio of critical work. Cinereach is a foundation and not-for-profit film production company which portrays itself as an organization dedicated to supporting independent films that catalyze change by, *inter alia*, addressing systemic barriers. To her dismay, Plaintiff Cho quickly discovered that the reality of working at Cinereach did not reflect the Company's stated mission or values: Cinereach is led by Executive Director Philipp Engelhorn ("Engelhorn"), who allowed a small group of White men, including himself, to operate with little accountability, thereby fostering a toxic work environment hostile to women and people of color (and their allies) at Cinereach.

2.      On a number of occasions, Cinereach and Engelhorn gave White, male employees multiple chances to attempt to address serious performance and behavioral issues, including for sexist conduct, harassment and abuse of other employees.  In contrast, Cinereach and Engelhorn

had a pattern of simply demoting or terminating women and/or employees of color without providing any warning and/or fair opportunity to address purported concerns about their performance.  Plaintiff Cho spent her years at Cinereach fighting against this atmosphere of deep-rooted and pervasive sexism and bigotry under which Cinereach's female employees and employees of color suffered.

3.      Plaintiff Cho, at one point the most senior woman and employee of color at Cinereach, herself suffered harassment and abuse from Cinereach's White male employees and explicitly complained to Engelhorn about the disparate treatment women and people of color faced at the company.  Engelhorn, while outwardly receptive to addressing concerns about culture and diversity at the Company, was slow to respond, if at all, to address complaints about the toxic atmosphere at Cinereach.  Indeed, Engelhorn's own actions contributed and perpetuated the toxic, hostile and discriminatory work environment.

4.      In November 2017, Plaintiff Cho explicitly complained to Engelhorn about the toxic work environment as well as the discrimination she personally experienced at Cinereach. In response, Engelhorn retaliated against Plaintiff Cho by manufacturing performance issues and engaged in a humiliating campaign to force her to quit. Engelhorn did this despite the fact that he himself had consistently issued Plaintiff Cho glowing performance reviews.

5.      Soon thereafter, Cinereach's and Engelhorn's on-going discrimination and retaliatory treatment caused Plaintiff Cho to begin experiencing serious medical issues, including abnormal weight loss, which required a period of medical leave. Even though Plaintiff Cho was on physician-directed medical leave approved by Cinereach, Engelhorn continued to retaliate against her while she was on medical leave, ultimately terminating her.

6.     Cinereach and Engelhorn violated federal, state, and city law by discriminating against and retaliating against Plaintiff Cho, and their actions caused her significant harm. Plaintiff Cho seeks damages and costs against Defendants Cinereach and Engelhorn, individually, for discriminating against her on the basis of her race, gender, and national origin and disability, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. (the "ADA"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq* ("NYCHRL").

7.     Plaintiff Cho also seeks damages and costs against Defendants for retaliating against her for complaining of the above-described discrimination, in violation of Title VII, § 1981, the ADA, and the NYCHRL.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

8.     Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff Cho's claims arising under Title VII the ADA, and § 1981.

9.     Plaintiff Cho filed a charge with the Equal Employment Opportunity Commission on July 9, 2018 and received a notice of her right to sue on October 31, 2018.

10.    Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

11.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

12.    Plaintiff Cho respectfully requests a trial by jury.

## PARTIES

13.    Plaintiff Cho, at all times relevant hereto, was and is a resident of New York

County in the State of New York.

14.    Upon information and belief, at all times relevant hereto, Defendant Cinereach

was and is a corporation organized under the laws of the State of Delaware with its principal

place of business located at 126 Fifth Avenue, New York, New York 10011 in New York

County.

15.    Upon information and belief, at all times relevant hereto, Defendant Engelhorn

was an individual residing primarily in New York County in the State of New York.

## STATEMENT OF FACTS

16.    Plaintiff Cho is an entertainment attorney and a film industry professional with

decades of experience both as an attorney and as a film producer, sales agent and director in the

entertainment industry.  She is a forty-eight year-old Asian American woman, and a citizen of

the United States who immigrated to New York City from Seoul, South Korea in 1979.

17.    She has worked on numerous films, including films nominated for, and awarded,

Academy Awards and Independent Spirit Awards.

18.    In the fall of 2013, Plaintiff Cho learned that Cinereach was creating a new

position to oversee its business affairs portfolio.  This position perfectly suited Plaintiff Cho's

skills and experiences; she applied and interviewed for the position.

19.    In a letter from Engelhorn dated February 28, 2014, Cinereach formally offered

Plaintiff Cho a position with Cinereach as its Head of Business Affairs.

20.    Plaintiff Cho accepted the offer and began her tenure at Cinereach effective April 7, 2014, with a base salary of $130,000 per year.

21.    During her employment with Cinereach, Plaintiff Cho worked out of Cinereach's main office located at 126 Fifth Avenue, New York, NY 10011.

22.    As Head of Business Affairs, Plaintiff Cho reported directly to Engelhorn and was a member of Cinereach's Executive Team, which conceptualizes and implements strategies for furthering the Cinereach Mission and is responsible for ensuring the efficacy of all programmatic and operational activity.

23.     From the first day Plaintiff Cho commenced work at Cinereach, she immediately noticed an odd tension in the work environment, which was further punctuated by an apparent lack of professionalism and clarity about processes.

24.    Plaintiff Cho soon discovered that Cinereach employees complained about a "toxic" company culture at Cinereach. Employees complained about not being "treated or valued equally."  Women complained about a culture of sexism.  Employees of color and their allies within the Company expressed a deep concern about a work environment that was not safe for people of color or discussions of race or gender that was critical to Cinereach's mission and programmatic work.

25.    Employees who had joined Cinereach excited by its mission to impact the larger culture positively through films and address systemic barriers in the industry reported becoming dismayed by the internal culture at Cinereach, which directly contravened its stated mission.

26.    Plaintiff Cho used her senior position at the Company to attempt to address these complaints and systemic problems by leading company culture initiatives and mentoring other women and employees of color.  She spoke to Engelhorn about her personal experience working

in predominately "White" spaces and raised issues on behalf of other employees who feared backlash.

27.    Plaintiff Cho received glowing performance reviews from Engelhorn while at Cinereach. In her 2015 performance review, Engelhorn wrote that Plaintiff Cho demonstrated "incredible leadership and perseverance."  He noted that, "[f]rom staff I consistently hear how impressed they are with Woo, mentioning how inspiring she is in this environment."  In addition, several female employees cited Plaintiff Cho as the person who most helped them succeed at Cinereach.

28.    Cinereach appointed Plaintiff Cho General Counsel in 2015. At this time, Cinereach also asked Plaintiff Cho to support Human Resources matters, which was previously handled solely by Engelhorn, as Cinereach did not have any dedicated Human Resources staff.

29.    In mid-2016, Plaintiff Cho again received a very positive performance review in which Engelhorn stated that "[i]t's been incredible to have you literally at the center of our culture building efforts — which include the incredible care and support you've been giving to [other] team members."  In his review Engelhorn also noted "just how incredible it's been to have you on the team, how valuable it is to have you as a real thought leader and contributor towards ensuring our work is in service of our mission, and how special your approach and care for me, for our team, and for our company has been."

30.    Shortly after that 2016 review, Cinereach underwent significant restructuring and promoted Plaintiff Cho to Director of Business Affairs and General Counsel. During this time, Plaintiff Cho became responsible for finance operations, which previously had fallen under Engelhorn's scope of responsibilities.  At this time, Cinereach disbanded the Executive Team and created the Advisory Council consisting of director level senior managers, including Engelhorn;

Paul Mezey ("Mezey"), the Director of Original Productions; Caroline Kaplan ("Kaplan"), the Director of Innovative Philanthropy; and Plaintiff Cho.

31.     Plaintiff Cho's salary increased with her positive performance and increasing responsibilities; after starting at an initial annual base salary of $130,000 in April 2014, her annual base salary was increased to $195,000 effective May 1, 2017.  Plaintiff also received merit-based bonuses on several occasions which was reserved only for those employees demonstrating exceptional performance.

32.     Plaintiff Cho continued to excel after the reorganization, receiving another positive review in 2017 in which Engelhorn noted that: "I'm consistently blown away by the passion and extra effort you show towards work."

33.     While Plaintiff Cho seemingly enjoyed a productive and successful career at Cinereach, she struggled throughout her tenure with being marginalized and silenced on the basis of her gender, race and national origin.

34.     This toxic work environment led Plaintiff Cho, less than two years into her employment with Cinereach, to seek assistance from an employee coach.

### Cinereach Creates a Hostile and Discriminatory Work Environment

35.     Engelhorn and Michael Raisler ("Raisler"), the co-founder of Cinereach and Creative Director, founded the Company while undergraduate film students and built the Company predominantly by hiring from Engelhorn's largely White circle of friends and White personal network.

36.     Filmmakers of color often asked Plaintiff Cho why Cinereach was so "White" in such a diverse city as New York.  They noted not feeling welcomed or comfortable visiting Cinereach offices.

37.    A number of Cinereach employees complained about being uncomfortable due to the "toxic" work environment and culture of "sexism" in the office.

38.    Specifically, several employees of Cinereach complained about the offensive, sexist jokes, the dismissive attitude towards women, and the bullying behavior of two White male senior members of Cinereach productions team.

39.    In response, Engelhorn and Cinereach engaged Corporate Counseling Associates ("CCA") and worked with a Human Resources ("HR") consultant at CCA, John Levy ("Levy"), and provided these men the opportunity to address the performance issues by working with CCA.

40.    During a performance review with a senior White male member of the productions team, in which Plaintiff Cho, Engelhorn, Raisler, and Mezey were present, this White male employee became enraged and launched a personal attack on Plaintiff Cho.  In Raisler's written account of the meeting, he wrote that: "I was unsettled by [White male production team member's] actions and the complete disregard for Woo he was showing[.]  [He] was clear in not wanting to engage in conversation with her, and I took his actions as highly disrespectful and also increasingly harmful for the well being of our team."  Despite attempts to calm him down, Raisler wrote that during the meeting, the White male productions team member "continued to launch personal attacks on Woo."  According to Raisler, "[his] demeanor became increasingly volatile and threatening . . . and I began to feel concerned about the physical and emotional well being of everyone in the room."

41.    Levy reported that this White male employee's conduct in the performance review meeting itself showed an unacceptable level of disrespect for others in the workplace, especially towards women.

42.     Despite this assessment, Engelhorn and Cinereach did not terminate this White male productions team member's employment, but gave him the opportunity to obtain employee coaching through CCA.  While he was engaged in employee coaching, Plaintiff Cho had to continue working in close proximity to him and feared that he could become unhinged again and launch a physical attack on her.

43.     After the White male productions team member accessed employee coaching, CCA reported to Cinereach that this employee did not have the level of self-awareness and maturity to take responsibility for his actions.  Despite this professional assessment by CCA and subsequent and continuing performance issues, to date, the White male productions staff member remains employed by Cinereach.

44.     Engelhorn and his own toxic behavior enabled the inappropriate sexist behavior of other Cinereach employees.

45.     Engelhorn explicitly expected female employees to be "nurturing" and "motherly," going so far as to describe one woman's job with Cinereach as a "den mother."

46.      Engelhorn allowed male colleagues to take credit for accomplishments of women at Cinereach.  Female employees complained that this behavior had the effect of discouraging and silencing women at Cinereach.

47.     During Advisory Council meetings, Engelhorn was often dismissive of ideas and opinion advanced by the women on the Advisory Council, and routinely interrupted or talked over women, including Plaintiff Cho.

48.     On one occasion, Engelhorn turned to Kaplan and Plaintiff Cho stating that they were constantly trying to "manipulate" him.

49.    Kaplan and Plaintiff Cho commiserated and were dismayed about Engelhorn's dismissive and sexist attitudes towards women.

50.    In addition, for years female and junior male employees at Cinereach complained that another senior, White male employee was also abusive towards them.  This White, male employee was given a number of opportunities by Engelhorn to address his behavioral issues over the course of several years, including working with a behavioral coach of his own choosing. Several individuals who worked at Cinereach identified his behavior as constituting "abuse."

51.    Three senior, White male employees plus Engelhorn himself, were given multiple chances to utilize employee or executive coaching to resolve their performance issues.

### Non-White Employees Were Given Little Chance To Address Performance Issues

52.    In stark contrast to White male employees at Cinereach, female employees and employees of color at Cinereach were subject to disparate treatment and were not given the same opportunity to address any real or perceived performance issues.

53.    One such example was Cinereach's Finance Associate, a South Asian woman who reported directly to Engelhorn (the "Finance Associate").

54.    Over the course of several years, Engelhorn approved her promotion and several annual salary increases.  Suddenly, in 2016, Engelhorn appointed his Executive Assistant – who had no background in accounting or finance – to supervise the Finance Associate.

55.    Engelhorn did not provide the Finance Associate with specific constructive feedback, nor did he work with her to address any perceived performance issues.  The Finance Associate considered the change in reporting structure to be a demotion and abruptly resigned.

56.    Another example is a Hispanic man who was Cinereach's Head of Operations (the "Head of Operations").  He joined Cinereach in mid-2017 and reported directly to

Engelhorn.  After having received positive feedback from Engelhorn, the Head of Operations summarily was fired three months later without any opportunity to address any perceived performance issues.

57.    Similarly, Cinereach attempted to terminate its female African-American Production Manager (the "Production Manger") without giving her the opportunity to address any perceived performance issues.

58.    In 2017 the Production Manger joined the Cinereach productions team which had consisted of all white men.

59.    Initially the Production Manager was outspoken about issues on the projects Cinereach supported in terms of representation in the telling of stories from communities of color and supporting projects from filmmakers of color.

60.    Despite having a policy where all employees were encouraged to participate in project review for Cinereach support in order to be "inclusive," while discussing the review process during a team-wide meeting, Engelhorn stated that he would not give much weight to recommendations submitted by the Production Manager because she joined the Company only recently.

61.    After being singled out publicly in this manner by Engelhorn, the Production Manager stopped openly advocating for projects and submitting recommendations, instead, passing her ideas through a young, White male colleague.

62.    Soon after the Production Manager was hired, her immediate supervisor, a White man, began complaining about her "attitude" and work performance.  The immediate supervisor and Mezey then sought to terminate her without notice.

63.     Plaintiff Cho intervened and insisted that Cinereach follow the requisite internal steps before terminating the Production Manager.

64.     Rather than engaging with the Production Manager in good faith, the Production Manager was provided only a brief time period to address any perceived performance issues and then terminated. Engelhorn was consulted and advised of the process; approved the decision to terminate the Production Manager.

### Plaintiff Cho Raises Representation Concerns and Informs Engelhorn That She Is Being Discriminated Against

65.     During this time, conversations around diversity, inclusion and representation issues had become prevalent in the culture at large and within the film industry as exemplified by hashtags #docsowhite and #oscarsowhite.  Films with perceived diversity issues were subject to controversy and audience backlash thereby derailing such films from reaching a wide audience.

66.     Cinereach stumbled into controversies and social media backlash with their supported and financed films such as *The Death and Life of Marsha P. Johnson* and *Beach Rats.* As a result, Engelhorn discussed with Advisory Council members the need to strategize around potential audience backlash for Cinereach supported projects.

67.     Given this context, Plaintiff Cho felt it necessary to raise concerns about potential representation issues to protect Company's film projects, into which Cinereach had invested significant staff time and funding, from public scrutiny and backlash.

68.     One of Cinereach's original production films in progress during 2017 was entitled *MATANGI/MAYA/M.I.A.* ("M.I.A. Project"), which is a documentary film about Mathangi "Maya" Arulpragasam, a Sri Lankan-born, British artist whose stage name is "M.I.A." A concern Plaintiff Cho had with Cinereach's work on the M.I.A. Project was that members of the

creative and producing team working on the film were all White – the director, editor, and all the producers were White.  There was not a single person of color advising or doing significant work on this film.

69.     In October 2017, Plaintiff Cho reached out to Mezey, who was overseeing the M.I.A. Project and raised her concerns about the lack of representation on the project.  Mezey reacted defensively and dismissed Plaintiff Cho's concerns.

70.     In early November 2017, Plaintiff Cho spoke with Engelhorn about the toxic and discriminatory work environment and the disparate treatment she was experiencing at Cinereach. During this conversation she informed Engelhorn that she was not being treated equally to other White and/or male directors at Cinereach, in that that she was not given the same level of support and growth opportunities which the Company provided its male and/or White directors, and that Engelhorn often undermined her efforts or refused to support Plaintiff Cho's initiatives after initially agreeing to do so.

### Engelhorn and Cinereach Retaliate Against Plaintiff Cho

71.     Shortly after Plaintiff Cho made this complaint in and around November 2017, Engelhorn began raising purported issues with Plaintiff Cho's performance at Cinereach.  His complaints came without warning and were entirely baseless.

72.     Specifically, Engelhorn began complaining that Plaintiff Cho was attempting to orchestrate more approval control from him on a project she was managing.  When she explained that it was Engelhorn himself who had suggested that Plaintiff Cho have more authority over the project, Engelhorn dropped this purported concern.

73.     Engelhorn then began accusing Plaintiff Cho of purported "aggressive" behavioral issues.  Engelhorn specifically noted that he was upset that Plaintiff Cho had raised representation issues with Mezey regarding the M.I.A. Project.

74.     Later in November 2017, Engelhorn placed Plaintiff Cho on official warning.  He also began insisting that Plaintiff Cho work from home and forbade her from coming into Cinereach's offices.

75.     When Plaintiff Cho attempted to address his perceived issues, Engelhorn rebuffed her and instead began trying to force Plaintiff Cho to resign from the Company by removing her from its Advisory Council and shutting her out of the strategic decision-making process, both of which she had been involved in previously.

76.     Engelhorn suggested that Plaintiff Cho announce her resignation at the Company Christmas Party.  Plaintiff Cho refused.

77.     Plaintiff Cho continued to request, repeatedly, that she be given the opportunity to address any perceived behavioral issues.  She informed Engelhorn that her current employee coach at CCA had noted that this type of referral was very common among CCA clients and that he would be happy to work with Plaintiff Cho on any of Engelhorn's concerns.

78.     In late December 2017, Engelhorn informed Plaintiff Cho that Levy, Cinereach's HR consultant at CCA, had advised him to provide Plaintiff Cho with the same opportunity afforded others, namely employee coaching services to address issues.  However, despite Levy's recommendation and similar opportunities afforded to senior, White male employees at Cinereach, Engelhorn refused to allow Plaintiff Cho access to employee coaching to address his purported concerns.

79.    On December 20, 2017, Engelhorn informed Plaintiff Cho he wanted her to agree to a termination process that would place her on a "path to consultancy" before her ultimate termination by March 31, 2018.

80.    Believing Engelhorn's ongoing actions to be discriminatory, Plaintiff Cho advised him that his treatment has detrimentally impacted her health and she intended to seek the counsel of an employment attorney.

**Emotional Distress and Disability Discrimination**

81.    After Cinereach's and Engelhorn's discrimination and retaliation towards Plaintiff Cho sharply increased in November and December 2017, Plaintiff Cho began to suffer from significant physical and mental symptoms of work-related stress and emotional distress.

82.    Most alarmingly, Plaintiff Cho began rapidly losing weight.

83.    On December 14, 2017, concerned about weight loss, Plaintiff Cho visited her regular physician, who found that Plaintiff Cho weighed approximately 100 pounds, nearly 20 pounds less than her normal weight.

84.    Plaintiff Cho's regular physician, concerned about this "abnormal weight loss," recommended that Plaintiff Cho undergo a series of tests and begin seeing a mental health specialist to address her on-going work-related stress.

85.    During this time, Plaintiff Cho continued to work on pressing matters on behalf of Cinereach as the Company had multiple original productions and supported films premiering at the 2018 Sundance Film Festival ("Sundance").

86.    Despite this, Engelhorn retaliated against Plaintiff Cho by reversing his decision to send her to Sundance with the Cinereach team to facilitate the sale of Cinereach-financed films as Plaintiff Cho had done the previous year.

87.     Given that Engelhorn was already in the process of trying to force Plaintiff Cho to leave Cinereach, Plaintiff Cho asked Engelhorn for permission to attend Sundance—the biggest industry event of the year—in her individual capacity and at her own cost in order to maintain her personal, industry relationships.  By email on January 16, 2018, Engelhorn refused and instead threatened to fire Plaintiff Cho immediately if he saw her at Sundance.

88.     On January 17, 2018 Plaintiff visited her regular physician again.  In the two weeks between visits, Plaintiff Cho had lost another seven pounds and now weighed less than 100 pounds.

89.     At this time, Plaintiff Cho emailed Engelhorn to inform him of the discriminatory and retaliatory nature of his actions, and to advise him of the impact his harassment and retaliatory treatment had on her health.

90.     On January 19, 2018, Plaintiff Cho's physician recommended that Plaintiff Cho immediately go on medical leave, cease working on Cinereach matters and halt all contact with Engelhorn as detrimental to her health.  Her physician advised that further weight loss could require immediate hospitalization.

91.     On January 20, 2018, Engelhorn wrote to Plaintiff Cho to discuss "the ongoing process of discussing the terms of your possible departure from the company"; in this email he acknowledged her serious health concerns.

92.     Also on January 20, 2018, Plaintiff Cho informed Engelhorn that her physician had directed her to take the next week off, and on January 28, 2018, Plaintiff Cho informed Engelhorn that her physician had directed her to take medical leave.

93.     On January 30, 2018, Engelhorn requested a physician's note, which Plaintiff Cho provided on January 31, 2018.

94.     After Plaintiff Cho began taking time off from work to address her medical condition, on or about February 7, 2018, Cinereach and Engelhorn locked her out of her Cinereach e-mail account without consulting with her and installed an automated "auto-reply" to respond to messages received.  This unilateral action significantly harmed Plaintiff Cho's reputation with her colleagues in the entertainment industry.

95.     Despite his awareness of being the cause of her serious health issues, Engelhorn continued to be the point of contact for Plaintiff Cho's medical leave instead of appointing someone else at Cinereach or one of the outside HR consultants.

96.     On March 21, 2018, Engelhorn reached out to Plaintiff Cho requesting additional documentation regarding her medical condition, giving Plaintiff Cho five to ten business days to produce a reassessment note.

97.     On March 31, 2018, Engelhorn again emailed Plaintiff Cho, falsely claiming that she had failed to follow his directions and stating that that if she did not comply by April 5, 2018, she will have "abandoned [her] position."

98.     Plaintiff Cho's regular physician was not able to schedule her for an appointment until April 11, 2018.  Although Plaintiff Cho had maintained her weight around 95 pounds between January 2018 and March 2018, Engelhorn's emails caused her additional emotional distress which resulted in further weight loss to approximately 85 pounds as of April 11, 2018.

99.     Plaintiff Cho's regular physician again certified her need for medical leave, which certification Plaintiff Cho provided to Cinereach.

100.    In and around mid-April 2018, Cinereach presented Plaintiff Cho with an agreement ending her employment with Cinereach for consideration.  Plaintiff Cho retained employment counsel, who contacted Cinereach on April 24, 2018.

101.    On May 8, 2018, ignoring the fact that he had proposed a separation agreement which was under consideration, Engelhorn terminated Plaintiff Cho while she was on physician-directed medical leave.

102.    This decision caused yet further distress to Plaintiff Cho.  She had met each of Cinereach's demands and consistently performed at an exceptional level up until her medical leave.

103.    Defendants took unlawful actions against Plaintiff Cho first because of her race, gender, and national origin, then retaliated against her because of her complaints of discrimination and her medical condition.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Race and National Origin Discrimination in Violation of Title VII**
**(Against Defendant Cinereach)**

104.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 103 with the same force as though separately alleged herein.

105.    Title VII prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of race.

106.    Cinereach is an employer as contemplated by Title VII, and Plaintiff is an employee as contemplated by Title VII.

107.    Cinereach discriminated against Plaintiff Cho on the basis of her race by subjecting her to a hostile work environment and taking adverse employment action against her.

108.    As such, Cinereach has violated Title VII.

109.     As a direct and proximate consequence of Cinereach's discrimination, Plaintiff Cho has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

110.     Cinereach's discriminatory treatment of Plaintiff Cho was willful and/or in reckless disregard of Plaintiff Cho's protected rights.  Accordingly, Plaintiff Cho is entitled to an award of punitive damages against Cinereach.

### SECOND CAUSE OF ACTION
**Gender Discrimination in Violation of Title VII
(Against Defendant Cinereach)**

111.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 110 with the same force as though separately alleged herein.

112.     Title VII prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of gender.

113.     Cinereach is an employer as contemplated by Title VII, and Plaintiff Cho is an employee as contemplated by Title VII.

114.     Cinereach discriminated against Plaintiff Cho on the basis of her gender by subjecting her to a hostile work environment and taking adverse employment action against her.

115.     As such, Cinereach has violated Title VII.

116.     As a direct and proximate consequence of Cinereach's discrimination, Plaintiff Cho has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

117.     Cinereach's discriminatory treatment of Plaintiff Cho was willful and/or in reckless disregard of Plaintiff Cho's protected rights.  Accordingly, Plaintiff Cho is entitled to an award of punitive damages against Cinereach

**THIRD CAUSE OF ACTION**
**Retaliation in Violation of Title VII**
**(Against Defendant Cinereach)**

118.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 117 with the same force as though separately alleged herein.

119.    Title VII prohibits an employer from retaliating against an employee for engaging in protected activity under Title VII.

120.    Cinereach is an employer as contemplated by Title VII, and Plaintiff is an employee as contemplated by Title VII.

121.    Plaintiff Cho engaged in protected activity under Title VII when she complained of race and gender discrimination.

122.    Cinereach retaliated against Plaintiff Cho by reprimanding her, barring her from the office, excluding her from her work assignments, requesting her resignation, and ultimately terminating her.

123.    As such, Cinereach has violated Title VII.

124.    As a direct and proximate consequence of Cinereach's retaliation, Plaintiff Cho has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

125.    Cinereach's retaliatory action towards Plaintiff Cho was willful and/or in reckless disregard of Plaintiff Cho's protected rights.  Accordingly, Plaintiff Cho is entitled to an award of punitive damages against Cinereach.

## FOURTH CAUSE OF ACTION
### Race Discrimination in Violation of Section 1981 of the Civil Rights Act of 1866
### (Against All Defendants)

126.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 125 with the same force as though separately alleged herein.

127.    Section 1981 of the Civil Rights Act of 1866 prohibits discrimination in contract, such as employment, on the basis of race.

128.    Cinereach discriminated against Plaintiff Cho on the basis of her race by subjecting her to a hostile work environment and taking adverse employment action against her.

129.    As such, Cinereach has violated Section 1981.

130.    As a direct and proximate consequence of Cinereach's discrimination, Plaintiff Cho has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

131.    Cinereach's discriminatory treatment of Plaintiff Cho was willful and/or in reckless disregard of Plaintiff Cho's protected rights.  Accordingly, Plaintiff Cho is entitled to an award of punitive damages against Cinereach.

## FIFTH CAUSE OF ACTION
### Retaliation in Violation of § 1981
### (Against All Defendants)

132.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 131 with the same force as though separately alleged herein.

133.    Section 1981 prohibits an employer from retaliating against an employee for engaging in protected activity under Section 1981.

134.    Plaintiff Cho engaged in protected activity under Section 1981 when she complained of race discrimination.

135.    Cinereach retaliated against Plaintiff Cho by reprimanding her, barring her from the office, excluding her from her work assignments, requesting her resignation, and ultimately terminating her.

136.    As such, Cinereach has violated Section 1981.

137.    As a direct and proximate consequence of Cinereach's retaliation, Plaintiff Cho has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

138.    Cinereach's retaliatory action toward Plaintiff Cho was willful and/or in reckless disregard of Plaintiff Cho's protected rights.  Accordingly, Plaintiff Cho is entitled to an award of punitive damages against Cinereach.

## SIXTH CAUSE OF ACTION
### Disability Discrimination in Violation of the ADA
### (Against Defendant Cinereach)

139.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 138 with the same force as though separately alleged herein.

140.    The ADA prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of their age.

141.    Cinereach is an employer as contemplated by ADA, and Plaintiff Cho is an employee as contemplated by ADA and suffered from severe medical conditions including an eating disorder.

142.    Cinereach discriminated against Plaintiff Cho on the basis of her disability by taking adverse employment action against her.

143.    As such, Cinereach has violated the ADA.

22

144.    As a direct and proximate consequence of Cinereach's discrimination, Plaintiff Cho has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

145.    Cinereach's discriminatory treatment of Plaintiff Cho was willful and/or in reckless disregard of Plaintiff Cho's protected rights.  Accordingly, Plaintiff Cho is entitled to an award of punitive damages against Cinereach.

**SEVENTH CAUSE OF ACTION**
**Retaliation in Violation of the ADA**
**(Against Defendant Cinereach)**

146.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 145 with the same force as though separately alleged herein.

147.    The ADA prohibits an employer from retaliating against an employee for engaging in protected activity under the ADA, such as requesting an accommodation.

148.    Cinereach is an employer as contemplated by the ADA, and Plaintiff is an employee as contemplated by the ADA.

149.    Plaintiff Cho engaged in protected activity under the ADA when she complained of disability discrimination and requested medical leave.

150.    Cinereach retaliated against Plaintiff Cho by reprimanding her, barring her from the office, excluding her from her work assignments, requesting her resignation, and ultimately terminating her while she was on medical leave.

151.    As such, Cinereach has violated the ADA.

152.    As a direct and proximate consequence of Cinereach's retaliation, Plaintiff Cho has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

153.    Cinereach's retaliatory action toward Plaintiff Cho was willful and/or in reckless disregard of Plaintiff Cho's protected rights.  Accordingly, Plaintiff Cho is entitled to an award of punitive damages against Cinereach.

## EIGHTH CAUSE OF ACTION
### Discrimination in Violation of the NYCHRL
### (Against All Defendants)

154.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 153 with the same force as though separately alleged herein.

155.    The NYCHRL prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of, *inter alia*, their race, gender, national origin, and disability.

156.    Cinereach is an employer as contemplated by NYCHRL, and Plaintiff Cho is an employee as contemplated by the NYCHRL.

157.    Cinereach discriminated against Plaintiff Cho on the basis of her race, age, gender, national origin, and disability by subjecting her to a hostile work environment and taking adverse employment action against her.

158.    As such, Cinereach has violated the NYCHRL.

159.    As a direct and proximate consequence of Cinereach's discrimination, Plaintiff Cho has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

160.    Cinereach's discriminatory treatment of Plaintiff Cho was willful and/or in reckless disregard of Plaintiff Cho's protected rights.  Accordingly, Plaintiff Cho is entitled to an award of punitive damages against Cinereach.

## NINTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL
### (Against All Defendants)

161.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 160 with the same force as though separately alleged herein.

162.    The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

163.    Cinereach is an employer as contemplated by the NYCHRL, and Plaintiff is an employee as contemplated by the NYCHRL.

164.    Plaintiff Cho engaged in protected activity under the NYCHRL when she complained of discrimination.

165.    Cinereach retaliated against Plaintiff Cho by reprimanding her, barring her from the office, excluding her from her work assignments, requesting her resignation, and ultimately terminating her.

166.    As such, Cinereach has violated the NYCHRL.

167.    As a direct and proximate consequence of Cinereach's retaliation, Plaintiff Cho has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

168.    Cinereach's retaliatory action toward Plaintiff Cho was willful and/or in reckless disregard of Plaintiff Cho's protected rights.  Accordingly, Plaintiff Cho is entitled to an award of punitive damages.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.  For the first cause of action, damages to be determined at trial;

B.  For the second cause of action, damages to be determined at trial;

C.  For the third cause of action, damages to be determined at trial;

D.  For the fourth cause of action, damages to be determined at trial;

E.  For the fifth cause of action, damages to be determined at trial;

F.  For the sixth cause of action, damages to be determined at trial;

G.  For the seventh cause of action, damages to be determined at trial;

H.  For the eighth cause of action, damages to be determined at trial;

I.  For the ninth cause of action, damages to be determined at trial; and

J.  For such other and further relief as the Court deems just and proper.


Dated:         New York, New York
               January 17, 2019

                              Respectfully Submitted,

                              LAW OFFICES OF VERONICA S. JUNG, PLLC

                              By:    /s/ Veronica S. Jung
                                     VERONICA S. JUNG (VJ-6211)
                                     OWEN H. LAIRD (WL-6994)
                                     200 Park Avenue, Suite 1700
                                     New York, NY 10166
                                     Telephone: (212) 897-1981
                                     Facsimile: (212) 682-0278

                              *Attorneys for Plaintiff Woo Jung Cho*