**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

WOO JUNG CHO,

                          Plaintiff,              19cv513 (JGK)

          - against -                    <u>MEMORANDUM OPINION &</u>
                                         <u>ORDER</u>
CINEREACH LTD. et al.,

                          Defendants.
_____

**JOHN G. KOELTL, District Judge:**

     The plaintiff, Woo Jung Cho, brought this action against
the defendants, her former employer Cinereach and Cinereach's
Executive Director, Philipp Engelhorn, for race, gender, and
disability discrimination and retaliation under Title VII,
Section 1981, the Americans with Disabilities Act, and the New
York City Human Rights Law. The defendants now move to compel
the plaintiff to arbitrate those claims on the ground that the
claims are covered by a mandatory arbitration provision in
Cinereach's Personnel Policy.

                              **I.**

     On February 28, 2014, Engelhorn, on behalf of Cinereach, a
small non-profit film production company, sent the plaintiff a
letter offering the plaintiff employment as Head of Business
Affairs. Cho Decl., Ex. A. The letter indicated that the
position was full time, that Cho would report to Engelhorn, and
that Cho would be "responsible for all aspects of legal and

                               1

business affairs, contract management, and 501(c)(3) compliance, with particular responsibility towards Cinereach Production's related legal affairs." Id. The letter stated that Cho would "be eligible to receive the benefits outlined in the Cinereach Personnel Policy for Regular Employees," and that "[a]s per the Cinereach Personnel Policy, we can agree that you will be entitled to vacation privileges pursuant to a 2nd year employee at start of employment." Id. The letter further stated that "[e]mployment at Cinereach is 'at will', which means that either you or the company may elect to terminate your employment at any time. You are considered a full-time regular employee and will receive a Personnel Policy that details the expectations of all Cinereach employees." Id. The February 28, 2014 offer of employment letter did not expressly mention arbitration.

On March 31, 2014, Cho signed the Cinereach Personnel Policy for Regular Employees, which had been drafted on June 30, 2013. Shiloh Decl., Ex. B. Section 1.1 of the Personnel Policy, labeled "Foreword", states that "[t]his document shall take effect as of the date noted on the cover. Cinereach reserves the right to unilaterally revoke, change or supplement the benefits, practices and policies outlined in this Personnel Policy at any time, with or without notice. The Executive Director may make interpretations and modifications of the Policy at the Executive

Director's direction and render decisions as to matters not covered herein." <u>Id.</u> at 1.

Section 1.2 of the Personnel Policy, labeled "At-Will Employment: Disclaimer", reads

> Nothing in this Personnel Policy is to be construed as a binding contract with Cinereach or a guarantee of continuity of employment, benefits or rights. While it is hoped that the employment of all our staff will be mutually rewarding, all employees at Cinereach are considered at will employees and either the employee or Cinereach may terminate the employment relationship at any time, for any reason, with or without cause and with or without notice.
>
> Information in this document supersedes any representation that may have been made to staff members during the hiring process, and during the course of employment at Cinereach. No permanent employment, or employment of any term, is intended or can be implied by or inferred from statements in this Policy.

<u>Id.</u>

Section 3.6 of the Personnel Policy, labeled "Arbitration", reads

> As a condition of your employment, you agree that if an employment dispute or claim arises as a result of your current or past employment with Cinereach, you will submit any and all such disputes or claims arising from or related to your employment or the termination of your employment exclusively to confidential binding arbitration under the Federal Arbitration Act, 9 U.S.C., Section 1. Similarly, any disputes or claims arising during your employment, including but not limited to claims of unlawful discrimination or harassment under federal or state

statutes; . . . and claims for violation of any
federal, state, or governmental law, statute,
regulation, or ordinance shall be submitted
exclusively to confidential binding arbitration under
the above provisions. You agree that this arbitration
shall be the exclusive means of resolving any dispute
arising out of your employment with Cinereach and that
you waive all rights to a civil court action regarding
these employment matters. Cinereach shall pay for all
fees and costs of the Arbitrator; however, each party
shall pay for its own costs and attorney's fees, if
any.

By accepting or continuing employment with Cinereach,
you automatically agree that arbitration is the
exclusive remedy for all disputes arising out of your
employment with Cinereach.

Id. at 9.

The acknowledgement of receipt of the personnel policy that

Cho signed on March 31, 2014 stated

I acknowledge that I have received a copy of the
Cinereach Domestic Personnel Policy dated June 30,
2013 and understand I am responsible for becoming
familiar with the policies described in it. I
understand that the information contained in it
represents Cinereach policies which may be modified
from time to time.

Cho Decl., Ex. C.[1]

Cho began her employment with Cinereach on April 7, 2014.

Compl. ¶ 20. As the Head of Business Affairs and member of the

Cinereach Executive team, Cho reported directly to Engelhorn,

---

[1] The acknowledgment contains a hand-written note: "Note exceptions stated in
offering letter." But there is no argument that the offering letter contained
any provision relevant to arbitration.

the Executive Director. Id. at ¶ 22. In 2015, the plaintiff was promoted to Director of Business Affairs and General Counsel. Id. at ¶¶ 28, 30. Cho alleges that throughout her tenure at Cinereach, Engelhorn fostered a toxic work environment that was hostile to both women and people of color, that Cho was a victim of harassment on the basis of her gender, race, and disability status brought on by the pattern of discriminatory treatment. See generally Compl. ¶¶ 37-80.

Cho alleges that in her capacity as chief in-house legal counsel she was involved in managing events in which employees involuntarily departed from Cinereach. Cho Decl. ¶ 5. Cho alleges that not once during the four involuntary terminations that occurred during her tenure did Engelhorn or anyone else at Cinereach raise the issue of mandatory arbitration in the event that legal disputes between Cinereach and the terminated employee arose. Id. Cho alleges that no one ever discussed with her or mentioned to her the existence of any mandatory arbitration provision in the context of potential legal disputes between Cinereach and its employees. Id. at ¶ 6.

Cho further alleges that in the spring of 2017, she discussed with Engelhorn the phenomenon of mandatory arbitration provisions after Cho read a Washington Post article and other related articles that discussed employment-related mandatory arbitration provisions as being against public policy. Id. at

¶ 8. Cho alleges that she and Engelhorn discussed the inherent coercive nature of mandatory arbitration and they discussed how mandatory arbitration had the effect of keeping discriminatory and unfair employment practices hidden from public scrutiny. Id. at ¶ 9. Cho alleges that during the conversation with Engelhorn, she expressed to him that she was happy that Cinereach did not have a mandatory arbitration provision in its employment letter agreements and did not have a policy of requiring employees to arbitrate employment disputes. Id. at ¶ 10. Cho alleges that at the time of that conversation, Engelhorn agreed with her and stated that Cinereach was handling this issue in the right way. Id.

On May 8, 2018, the plaintiff was terminated by Engelhorn. Compl. ¶ 101. On January 17, 2019, the plaintiff brought this action against Cinereach and Engelhorn for claims of gender, race, and disability discrimination and retaliation for alleged conduct that occurred during the course of her employment with Cinereach. On February 8, 2019, the defendants moved to compel the plaintiff to submit her claims to arbitration.

## II.

Under 9 U.S.C. § 4, "a district court must enter an order to arbitrate upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp., 460 U.S. 1, 22 n.27 (1983) (quotation marks omitted). A
court considering whether to compel arbitration pursuant to a
purported arbitration agreement must decide "(1) whether there
exists a valid agreement to arbitrate at all under the contract
in question . . . and if so, (2) whether the particular dispute
sought to be arbitrated falls within the scope of the
arbitration agreement." Hartford Accident & Indemn. Co. v. Swiss
Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001)
(internal quotation marks and citation omitted). The question
whether parties have contractually bound themselves to arbitrate
a particular dispute involves an "interpretation of state law."
Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 26 (2d Cir.
2002) (Sotomayor, J.); see also First Options of Chi., Inc. v.
Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the
parties agreed to arbitrate a certain matter (including
arbitrability) courts generally . . . should apply ordinary
state-law principles that govern the formation of contracts.").

    The parties in this case do not dispute that New York law
should be applied to determine whether the parties agreed to
arbitrate the claims at issue in this case. The plaintiff does
not dispute that if the agreement to arbitrate is valid, then
the plaintiff's claims are subject to the mandatory arbitration
provision. The only question is whether there is a valid
arbitration agreement.

**A.**

Under New York law, a person "who signs or accepts a written contract is conclusively presumed to know its contents and assent to them." Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (internal quotation marks and citation omitted).

Although the initial offer of employment letter did not mention arbitration, the February 28, 2014 offer letter clearly stated that the plaintiff would be "considered a full-time regular employee and will receive a Personnel Policy that details the expectations of all Cinereach employees." The plaintiff subsequently received and, on March 31, 2014, signed the acknowledgment form in connection with the Personnel Policy that included the arbitration provision. The plaintiff signed the acknowledgement of the personnel policy prior to beginning to work for Cinereach on April 7, 2014, where she worked until her termination in May 2018. The plaintiff thus entered into a binding contract with Cinereach when she signed the Personnel Policy. See Chanchani v. Salomon/Smith Barney, Inc., No. 99-cv-9219, 2001 WL 204214, at *3 (S.D.N.Y. Mar. 1, 2001) ("Courts in this district routinely uphold arbitration agreements contained in employee handbooks where, as here, the employee has signed an acknowledgment form.") (collecting cases); Thomas v. Pub. Storage, 957 F. Supp. 2d 496, 500 (S.D.N.Y. 2013) ("Given the

evidence in the record that Plaintiff received notice of PSCC's arbitration policy at the beginning of her employment and continued to work for PSCC, Plaintiff has failed to raise a genuine issue of fact as to whether she assented to arbitration of this employment-related dispute."). In this case, the "plaintiff is bound by the agreement to arbitrate unless she can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract." Arakawa v. Japan Network Grp., 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999). The plaintiff has not attempted to make any such showing. Thus, the plaintiff entered into a contract with Cinereach as expressed in the Personnel Policy.

**B.**

The plaintiff argues that although she agreed to the Personnel Policy, she should not be compelled to arbitrate her claims because Section 1.2 of the Personnel Policy states that "[n]othing in this personnel policy is to be construed as a binding contract with Cinereach or a guarantee of continuity of employment, benefits or rights." This argument is without merit.

"An arbitration agreement included in an employee handbook with language 'providing that the handbook does not constitute . . . a contract of employment or that the arbitration policy may be amended' is enforceable when the language of the arbitration agreement is 'distinct and mandatory' and when the

employee is advised of the policy and 'that compliance with it [is] a condition of employment." Isaacs v. OCE Bus. Servs., Inc., 968 F. Supp. 2d 564, 571 (S.D.N.Y. 2013) (quoting Brown v. St. Paul Travelers Co., 559 F. Supp. 2d 288, 292 (W.D.N.Y. 2008), aff'd, 331 F. App'x 68 (2d Cir. 2009)).

In this case, the language the plaintiff points to in Section 1.2 simply reiterates that the Personnel Policy does not create anything more than an at-will employment relationship. The title of Section 1.2 is "At-Will Employment: Disclaimer" and the entire gist of the Section is that nothing – nothing in the Personnel Policy, nor representations made during the hiring process or afterwards – overrides the presumption in New York that the employment relationship between Cinereach and its employees is at will. See Henderson v. Physician Affiliate Grp. of N.Y. P.C., No. 18-cv-3430, 2019 WL 3778504, at *5 (S.D.N.Y. Aug. 12, 2019). But nothing in Section 1.2 suggests that other parts of the Personnel Policy cannot create binding agreements between the plaintiff and Cinereach with respect to other provisions in the Personnel Policy.

Indeed, Section 3.6, the arbitration provision, is written in "distinct and mandatory" terms. The first sentence states that "[a]s a condition of your employment, you agree that if an employment dispute or claim arises as a result of your current or past employment with Cinereach, you will submit any and all

such disputes or claims arising from or related to your employment or the termination of your employment exclusively to confidential binding arbitration under the Federal Arbitration Act[.]" The rest of the provision includes "distinct and mandatory" language such as "[y]ou agree that this arbitration shall be the exclusive means of resolving any dispute arising out of your employment" (emphasis added), "Cinereach shall pay for all fees and costs of the Arbitrator, however, each party shall pay for its own costs and attorney's fees, if any" (emphasis added) and "[b]y accepting or continuing employment with Cinereach, you automatically agree that arbitration is the exclusive remedy for all disputes arising out of your employment with Cinereach." The mandatory language of the arbitration provision confirms that it is binding on the parties and must be enforced. See MQDC, Inc. v. Steadfast Ins. Co., No. 12-cv-1424, 2013 WL 6388624, at *1 (E.D.N.Y. Dec. 6, 2013) (holding that the plain language in arbitration agreement was mandatory where the operative language stated that "any dispute" "shall be submitted to arbitration").

The cases cited by the plaintiff are inapposite. For example, in Maas v. Cornell University, 721 N.E.2d 966 (N.Y. 1999), the New York Court of Appeals declined to find an implied-in-fact contract between Cornell University and a faculty member by virtue of the University's internal procedures

where the faculty member was not ever aware of those procedures. But there is no question in this case that the plaintiff signed the acknowledgment that she had received the Personnel Policy and was responsible for becoming familiar with the policies described in the Personnel Policy. In Jain v. McGraw-Hill Companies, Inc., 827 F. Supp. 2d 272, 278-79 (S.D.N.Y. 2011), the court found that an employee manual did not create a binding contract that limited the employer's right to discharge the employee for using a company's grievance procedures because the employee manual did not contain "a single statement indicating the existence of such a policy" and included explicit disclaimers precluding the manual from serving as the basis for a binding contract beyond the at-will presumption.

In this case, the disclaimer in the Personnel Policy was limited to the narrow purpose of disclaiming the existence of anything more than an at-will employment relationship and there was explicit language in the arbitration provision indicating that it was intended to create a binding procedure. None of the cases cited by the plaintiff addresses a situation, like the one in this case, in which an arbitration provision's plain language demonstrates that it is intended to be binding on the parties.

**C.**

The plaintiff's argument that the arbitration agreement is unenforceable because the Foreword of the Personnel Policy and

the acknowledgment that the plaintiff signed indicated that Cinereach and Engelhorn, as Executive Director, could unilaterally modify the contract, is without merit.

"Under New York law, a contract is not illusory merely because its terms give discretion to one party to the contract, as every contract encompasses the implied duty of good faith and fair dealing." Lebowitz v. Dow Jones & Co., 508 F. App'x 83, 84 (2d Cir. 2013) (internal citations omitted). Rather, "New York courts consider whether a defendant's behavior is reasonable before finding a contract illusory." Id. at 84-85. "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." Dalton v. Educational Testing Serv., 663 N.E.2d 289, 291 (N.Y. 1995).

The Personnel Policy included language saying that "Cinereach reserves the right to unilaterally revoke, change or supplement the benefits, practices and policies outlined in this Personnel Policy at any time, with or without notice. The Executive Director may make interpretations and modifications of the Policy at the Executive Director's direction and render decisions as to matters not covered herein." The acknowledgment signed by Cho also purports to allow that "Cinereach policies . . . may be modified from time to time."

There is no showing that the defendants did or contemplated using their purported power to unilaterally modify the Personnel Policy during the period of the plaintiff's employment. There is thus no showing that the defendants acted unreasonably or in bad faith with respect to the purported unilateral modification provisions of the Personnel Policy. And there is no evidence or allegation that the arbitration provision in the Personnel Policy was changed in any way from the date on which the plaintiff agreed to be bound by that provision

Moreover, to the extent that the unilateral modification provisions of the Personnel Policy were invalid, they would be severed from the arbitration provision. See Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 125-26 (2d Cir. 2010) ("Schreiber directs that the 'appropriate remedy' when a court is faced with a plainly unconscionable provision of an arbitration agreement—one which by itself would actually preclude a plaintiff from pursuing her statutory rights—'is to sever the improper provision of the arbitration agreement, rather than void the entire agreement."); Castellanos v. Raymours Furniture Co., 291 F. Supp. 3d 294, 301-02 (E.D.N.Y. 2018) ("Having determined that the EAP's limitations provision is unenforceable, the Court concludes that the appropriate remedy is to sever that provision."). Such severance would be simple in this case where the purported unilateral modification

clauses appear in entirely different parts of the Personnel
Policy from the arbitration provision, and where the unilateral
modification provisions were never used.

Thus, the agreement to arbitrate is not unenforceable
because the Personnel Policy purports to give Engelhorn and
Cinereach a right to modify unilaterally the Personnel Policy.

**D.**

The conversation that the plaintiff had with Engelhorn in
spring 2017 about mandatory arbitration provisions, generally,
and about arbitration at Cinereach in particular, did not modify
the contract between Cinereach and the plaintiff.

In general, parties may modify written contracts orally
when the contracts do not contain a no-oral-modification clause.
See Maricultura Del Norte v. World Bus. Capital, Inc., 159 F.
Supp. 3d 368, 377 (S.D.N.Y. 2015) (citing Healy v. Williams, 818
N.Y.S.2d 121, 123 (App. Div. 2006), aff'd sub nom., Maricultura
Del Norte v. Umami Sustainable Seafood, Inc., 769 F. App'x 4 (2d
Cir. 2019). "To be enforceable, an oral modification must
possess all of the elements necessary to form a contract,
including valid consideration." Cohan v. Movtady, 751 F. Supp.
2d 436, 442 (E.D.N.Y. 2010) (collecting cases). Thus, the
modification must independently be supported by offer,
acceptance, consideration, mutual assent and intent to be bound.

See Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004).

The Personnel Policy did not contain a no-oral-modification clause. In fact the Personnel Policy stated that the Executive Director may make interpretations and modifications of the Policy at his discretion and that Cinereach had the right to unilaterally revoke, change, or supplement the benefits, practices and policies. Thus, the Personnel Policy was able to be modified orally by the parties.

But the spring 2017 conversation between the plaintiff and Engelhorn was not an effective modification because it was not a definite and enforceable contract that demonstrated an offer, an acceptance, and intent by both parties to be bound. See Pratt v. BII Inc., 749 N.Y.S.2d 214, 215 (App. Div. 2002) (finding no effective oral modification when the alleged oral modification "showed, at best, only an agreement to agree, and is otherwise too indefinite to be enforceable"); Gen. Elec. Co. v. Metal Res. Grp. Ltd., 741 N.Y.S.2d 218, 220 (App. Div. 2002) (same).

The alleged conversation between the plaintiff and Engelhorn was indefinite and abstract, and there was no consideration provided to Cinereach for the alleged agreement to give up its right to require arbitration of employment disputes with the plaintiff. At most, the conversation shows that Engelhorn may have shared the plaintiff's broad public policy

concerns with mandatory arbitration and that Engelhorn may have been mistaken about the nature of the Cinereach Personnel Policy. These alleged statements are too indefinite to indicate an intent by the parties to displace the written arbitration agreement entered into between Cinereach and the plaintiff.

Moreover, as a lawyer and the general counsel of Cinereach, the plaintiff was a sophisticated party herself, and therefore it would be unreasonable under these circumstances for her to expect that the indefinite conversation she had with Engelhorn displaced the plain language of the Personnel Policy when it came to mandatory arbitration of employment disputes between Cinereach and the plaintiff. Cf. Terra Securities Asa Konkursbo v. Citigroup, Inc., 740 F. Supp. 2d 441, 448 (S.D.N.Y. 2010) (collecting cases that in the fraud context, the reasonableness of a claim of reliance must be considered in light of the plaintiff's sophistication).

Therefore, the plaintiff's conversation with Engelhorn in the spring of 2017 was not an effective modification of the Personnel Policy and did not displace the plain language of Section 3.6 of the contract which, as explained above, clearly compels arbitration of the claims in this case.

**E.**

The fact that Cinereach allegedly never compelled four other terminated employees to arbitrate is irrelevant. The

plaintiff provides no legal basis for her contention that
because Cinereach did not require arbitration in the case of
four other employees it is foreclosed from requiring arbitration
of the disputes the plaintiff had sought to litigate. Indeed,
the plaintiff has not alleged that there were any employment
disputes with the other employees, much less that the other
employees sought to litigate such disputes in court. The
plaintiff simply asserts that there were four previous instances
in which an employee was involuntarily terminated. This is
insufficient to raise a genuine issue that the agreement to
arbitrate should not be enforced against the plaintiff. See
Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 984 (2d Cir.
1996).

In any event, the fact that no one at Cinereach ever
discussed with the plaintiff the possibility of compelling
disputes to arbitration or that on four other occasions no one
raised the possibility with the plaintiff that the employee
would be compelled to arbitrate did not effect a modification of
the arbitration agreement between the plaintiff and Cinereach.
To the extent that the plaintiff argues that Cinereach's failure
to raise with the plaintiff the possibility of arbitrating other
disputes with other terminated employees modified the contract
between the plaintiff and Cinereach, the plaintiff has failed to
put forward evidence that there was a definite offer,

acceptance, mutual assent, consideration, and intent to be bound between the parties. See Register.com, Inc., 356 F.3d at 427.

To the extent the plaintiff may be arguing that Cinereach is estopped from enforcing the arbitration agreement against her, the plaintiff's argument fails because the plaintiff cannot establish that she relied on Cinereach's alleged forbearance in enforcing the arbitration agreement against other Cinereach employees or that any reliance by the plaintiff on Cinereach's alleged failure to enforce the arbitration agreement on other occasions was reasonable. See Town of Hempstead v. Incorporated Vill. of Freeport, 790 N.Y.S.2d 518, 520 (App. Div. 2005).

**F.**

Finally, the plaintiff argues that, at the very least, she cannot be compelled to arbitrate her claims against Engelhorn because the arbitration provision in the Personnel Policy did not purport to cover employment-related claims between the plaintiff and Engelhorn.

By its plain terms, the arbitration provision covers "an employment dispute or claim [that] arises as a result of your current or past employment with Cinereach."

"Under principles of estoppel, a non-signatory to an arbitration agreement [such as Engelhorn] may compel a signatory to that agreement to arbitrate a dispute where a careful review of relationship among the parties, the contracts they signed,

and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Ragone, 595 F.3d at 126-27 (quotation marks, citation, and alteration omitted).

In this case, the issues on which the non-signatory defendant Engelhorn seeks to compel arbitration are wholly overlapping with the issues for which Cinereach seeks to compel arbitration. The plaintiff's discrimination claims against Cinereach are largely based on allegations that Engelhorn oversaw and fostered a hostile work environment that victimized the plaintiff. Engelhorn was not just any employee of Cinereach; he was the Executive Director. Further, the arbitration agreement itself states that an employee will be compelled to arbitrate any "employment dispute or claim [that] arises as a result of your current or past employment with Cinereach." The claims against Engelhorn are part and parcel of the plaintiff's employment dispute with Cinereach and thus the plaintiff was on ample notice that she would be made to arbitrate her employment-related claims against individual defendants who are also Cinereach employees. Finally, Engelhorn's position, Executive Director of Cinereach, is explicitly mentioned in the Personnel Policy as having a special role in employment matters. There is thus "no question that the subject matter of the dispute between

[the plaintiff] and [Cinereach] is factually intertwined with the dispute between [the plaintiff] and [Engelhorn]." Ragone, 595 F.3d at 128.

Indeed, courts routinely compel plaintiffs to arbitrate employment-related claims against individual non-signatory defendants who are employees of the signatory corporate defendant. See, e.g., Keyes v. Ayco Co., L.P., No. 17-cv-955, 2018 WL 6674292, at *5 (N.D.N.Y. Dec. 19, 2018); Washington v. William Morris Endeavor Entm'nt, LLC, No. 10-cv-9647, 2011 WL 3251504, at *9 (S.D.N.Y. July 20, 2011).

Thus, the plaintiff is estopped from denying that she must arbitrate her claims against Engelhorn.

## CONCLUSION

The Court has considered all the arguments of the parties. To the extent not discussed, they are either moot or without merit. The motion to compel arbitration brought by Cinereach and Engelhorn is **granted.** The Clerk is directed to close Docket No. 11. This case is stayed pending the result of the arbitration hearing. The parties are directed to advise the Court of the status of the cases within seven (7) days after the final

decision of the arbitrator or within seven (7) days of any other reason to close this case.

**SO ORDERED.**

**Dated:     New York, New York**
**            March 23, 2020        _____/s/ John G. Koeltl_____**
**                                     John G. Koeltl**
**                                 United States District Judge**